IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terry Jerome Player, | C/A No.: 1:09-1801-MBS-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Joey Norris, Jeanie Hughes, Captain Joyce Brunson, and Dr. Wilner Lane, | |
| Defendants. | |

Plaintiff, who is proceeding *pro se* in this action, alleges he has been subjected to various unconstitutional conditions of confinement. Before the court are the following motions: (1) Defendants Norris, Brunson, and Hughes' Motion for Summary Judgment [Entry #33]; (2) Defendant Wilner's Motion to Dismiss [Entry #38]; and (3) Plaintiff's Motion for Leave to Amend the Complaint [Entry #44].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment and to dismiss are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff was previously incarcerated at the Florence County Detention Center ("FCDC," referred to as "Effingham" by Plaintiff) beginning October 21, 2008. *See* Exh. E to Aff. of Norris [Entry #33-7]. Plaintiff was released to the custody of the South Carolina Department of Corrections ("SCDC") to serve a sentence on unrelated charge.

*Id.* Subsequently, Plaintiff was again booked into the FCDC on January 8, 2009 until his ultimate release into SCDC's custody on or about October 13, 2009. *Id.* Plaintiff filed the original complaint in the above-captioned matter on July 9, 2009 [Entry #1]. Plaintiff then filed an amended complaint on October 1, 2009 [Entries #17, 22], naming Defendant Dr. Lane A. Wilner, incorrectly named as Wilner A. Lane (hereinafter referred to as "Dr. Wilner").

In his original complaint, Plaintiff asserted claims under 28 U.S.C. § 1983, alleging he has been subjected to various unconstitutional conditions of confinement, as well as being denied adequate medical care, access to the courts and mistreatment of grievances. Specifically, Plaintiff complains that he was placed in detox days after a car accident, without a bed and while he was suffering from multiple broken bones. (Compl. 4). Plaintiff claims that his requests to be taken to the hospital were repeatedly denied, although he admits that he was examined by Defendant Nurse Hughes. (Compl. 5–6). Plaintiff also complains that he was given only Tylenol for pain. (*Id.*)

Plaintiff next complains that Officer Abigail McGill, who is not a defendant in this matter, opened his legal mail without him present on June 17, 18, and 22 of 2009. (Compl. 6–8). Plaintiff states that he wrote grievances on each of these occasions. (*Id.*) Plaintiff admits that Defendant Captain Brunson investigated this matter and informed Plaintiff that there was a new officer in the mail room and that he would instruct the new employee not to open legal mail. (*Id.*)

Among Plaintiff's many complaints, Plaintiff alleges there is overcrowding at FCDC and not always an officer available to give an immediate response to any issue when he is in his cell. (Compl. 9–10). Similarly, Plaintiff complains that officers "do not make a walk-around on the hour." (Compl. 10). He also complains that the federal inmates will lie about other inmates, although he does not make any specific allegations in this regard. (*Id.*) Plaintiff complains that he is not allowed to give anything, including paper to another inmate. (Compl. 11). Plaintiff states "We have been denied the right to a grievance . . .," but fails to provide a specific example. (*Id.*) Plaintiff complains that female officers can see him using the toilet and taking a shower. (*Id.*) Plaintiff also alleges there is not a law library or legal books. (Compl. 13). Plaintiff complains that the jumpers and linens are not clean and smell bad. (Compl. 14). Plaintiff also claims the showers are dirty and smell bad. (*Id.*) Plaintiff also complains that he is not given enough food. (Compl. 19).

Plaintiff alleges that he missed two doctors appointments in 2008 while incarcerated, but gives no details about why he missed such appointments, who caused him to miss such appointments, or why he was seeing the doctors. (Compl. 15). Plaintiff alleges he was attacked on February 18, 2009, and that he was not sent to the hospital despite his request, but makes no allegations regarding whether he was hurt in the attack, or how. (Compl. 16). Plaintiff admits that his foot was examined by the doctor[1] on

---

[1] Plaintiff refers to the doctor as Dr. Anderson, but states in a subsequent filing [Entry #44] that the correct name is Dr. Wilner Lane, and not Dr. Anderson.

February 20, 2009, and an x-ray was ordered, but complains that no x-ray was ordered for his back. (*Id.*) He also complains that he has requested medicine on many occasions and such requests have been denied. (*Id.*) Plaintiff does not state the type of medicine he has requested or why it has been requested.

In his amended complaint, Plaintiff sets forth allegations concerning his medical care from August 13, 2009 until September 14, 2009. Plaintiff states that he has "burning pain in my back, my hips, and my side." (Am. Compl. 2). However, Plaintiff's own allegations indicate he was regularly seen by medical at FCDC, and had at least two visits to McLeod Hospital during this time. It appears Plaintiff is primarily complaining that he has been denied medical care because: (1) he was asked to sign the hospital bill, and (2) he has not been taken to see a neurosurgeon, which he alleges the emergency room doctor instructed in his hospital paperwork. (*See generally* Am. Compl.)

Defendants Norris, Brunson, and Hughes filed their motion for summary judgment on January 7, 2010 [Entry #33], and Defendant Wilner filed his motion to dismiss on January 29, 2010 [Entry #38]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motions. [Entries #35, 39]. Plaintiff filed a response in opposition to the motion of Defendants Norris, Brunson, and Hughes. [Entry #41]. Plaintiff did not file an opposition to Defendant Wilner's motion to dismiss. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants

Norris, Brunson, and Hughes' motion for summary judgment and Defendant Wilner's motion to dismiss [Entries #33 and #38, respectively], rendering moot the remaining motions.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence

of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III. Analysis

   A.  Claim of Medical Indifference

In his complaint, the Plaintiff asserts that he has been denied various medical attention that he states he needs. A pretrial detainee's "denial of medical care" claims are analyzed under the Due Process clause of the Fourteenth Amendment and not the Eighth Amendment.[2] *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983). However, for purposes of analysis of "denial of medical care" claims, the standard of "deliberate indifference" is used in both Fourteenth and Eighth Amendment inquiries. *See*

---

[2] Plaintiff appears to have been a pre-trial detainee when he filed the original complaint. During the course of his lawsuit, Plaintiff was released into the custody of the SCDC, and Plaintiff does not provide specificity regarding his status for each of his claims. Regardless of whether Plaintiff's claims are analyzed under the Fourteenth or Eighth Amendment, the same standards generally apply. However, a pretrial detainee "may be detained by the government to ensure his presence at trial; however, the conditions and restrictions to which he is subject at the detention facility cannot amount to punishment, or otherwise violate the Constitution." *Barnes v. Dobey, et al.*, C/A No. 4:05-2073-MBS, 2007 WL 2908582 at *2 (D.S.C. Sept. 30, 2007).

*Hill v. Nicodemus*, 979 F.2d 987, 990-991 (4th Cir. 1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988).

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the

case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's

decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

In the instant case, the record shows that Plaintiff received substantial medical care during his incarceration at the detention center. *See* Exh. A to Aff. of Norris [Entry #33-3]. Furthermore, the record shows that Plaintiff was afforded several opportunities for outside medical consultations, including x-rays and specialized medical procedures, when warranted. (*Id.*) Though Plaintiff may not agree with the medical care and treatment he

received, such a disagreement does not warrant a constitutional cause of action. Therefore, Plaintiff's medical indifference claim should be dismissed and Defendants are entitled to summary judgment.

B. Claim of Denial of Access to the Courts

Plaintiff also alleges a denial of access to the courts claim, based on the alleged lack of a law library. Claims relating to the lack of access to a law library at the FCDC do not raise a cognizable § 1983 claim. Furthermore, Plaintiff's claims relating to the right to a law library at FCDC are foreclosed by Fourth Circuit case law.

The Fourth Circuit has ruled the Constitution of the United States does not require every local jail to have a law library. *See Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987). The holding in *Magee v. Waters* is based on the knowledge that county jails are generally short-term facilities, wherein "the brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Id.* at 452. Additionally, the right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, an inmate cannot rely on conclusory allegations; rather he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). In this case, Plaintiff does not allege any specific facts as to how a pending legal case, or any other legal matter, has been adversely affected due to his denial of access to legal

materials, and, therefore, Plaintiff has failed to state a cognizable claim.

C. Conditions of Confinement

Plaintiff's claims concerning the conditions of confinement include complaints about the food; the smell and cleanliness of bed sheets, jumpers, and showers; the denial of his ability to exchange personal property with other inmates; and that officers are not always immediately available to Plaintiff when he has a request. To properly assert a claim under 42 U.S.C. § 1983, Plaintiff must show: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws; (3) by a person acting under color of state law. *See* 42 U.S.C. § 1983. Plaintiff does not allege any physical injuries as a result of these complaints. Plaintiff's unsupported allegations are insufficient to state a viable § 1983 claim. These conditions, while uncomfortable for Plaintiff, simply do not rise to the level of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."); *Lasure v. Doby*, C/A No. No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. 2007) (noting that plaintiff was "being held in a county jail facility, not a hotel"). Therefore, Defendants are entitled to summary judgment on these claims.

D. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the

defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded

> from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

### E. Dr. Wilner's Motion to Dismiss

Dr. Wilner was not named in this action until Plaintiff amended the complaint [Entry #17]. Dr. Wilner moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), (4), (5), and (6). [Entry #38]. Plaintiff does not address the alleged defects in process, service of process, or lack of personal jurisdiction in any

filing before the court; thus, these arguments are presumed to be unopposed. Therefore, Plaintiff's claims against Dr. Wilner should be dismissed.

In addition, the court notes that Plaintiff's allegations in the amended complaint do not state a cause of action against Dr. Wilner. To the contrary, Plaintiff alleges that Dr. Wilner ran some tests on Plaintiff on August 21, 2009 and that he was sent to the hospital on August 28, 2009 for more tests. Plaintiff admits in his amended complaint that he continued to be in Dr. Wilner's care and was put on bedrest while incarcerated on September 9, 2009. Thus, Plaintiff's pleadings do not set forth a cause of action for medical indifference against Dr. Wilner.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants Norris, Brunson, and Hughes' Motion for Summary Judgment [Entry #33] and Defendant Dr. Wilner's Motion to Dismiss [Entry #38] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

IT IS SO RECOMMENDED.

July 16, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**